**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Rony Guldmann (RG 5323)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

HENRY FRANKLIN, *on behalf of himself and others similarly situated*,

     Plaintiff,

     v.

WHOLE FOODS MARKET GROUP, INC.,
AMAZON.COM, INC, and CORNUCOPIA
LOGISTICS, LLC.

     Defendants.

_____

Case No.: 1:20-cv-04935-VEC

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff HENRY FRANKLIN ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, pursuant to this First Amended Class Action Complaint against Defendants WHOLE FOODS MARKET GROUP, INC. ("Whole Foods"), AMAZON.COM, INC. ("Amazon"), and CORNUCOPIA LOGISTICS, LLC ("Cornucopia") (collectively, "Defendants"), alleges the following:

## NATURE OF THE ACTION

1.      This action seeks to bring a stop to, and to obtain redress for, those harmed by Defendants' unlawful and discriminatory criminal history screening policies and practices, which have been used to deny employment opportunities to otherwise qualified job applicants.

2.      Plaintiff brings this lawsuit on his behalf of himself and all others similarly situated against Defendants for willful and/or negligent violations of (1) the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292 *et seq.*, (2) the New York City Human Rights Law ("NYCHRL"), as amended by the Fair Chance Act, N.Y.C. Admin. Code § 8-101 *et seq.*, and (3) the New York State Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*

## STATEMENT OF FACTS

3.      In mid-April, 2019, Plaintiff, a resident of Staten Island, NY, applied for a delivery person position with Cornucopia Logistics on Indeed.com. The sole duty of the position was to work as a delivery person to deliver products sold by Whole Foods to its customers' homes.  Whole Foods is a high-end grocery store chain in New York City and around the country. Whole Foods is a wholly owned subsidiary of Amazon, which has complete control over Whole Foods's operations, hiring practices, and employment policies. Amazon makes all final hiring decisions for employees and independent contractors employed by Whole Foods or provided by Whole Foods's vendors, such as Cornucopia Logistics, which is contracted by Amazon to provide workers to Amazon and Whole Foods.

4.      Plaintiff applied for the job by filling out an online application posted by Cornucopia on Indeed.com, which stated that the application process required a background check to which applicants must consent. Plaintiff has a criminal history.

5.      About a week or two after Plaintiff filled out the online application, he received a letter from Amazon dated April 22, 2019 informing him that a criminal background check had been undertaken on him and that Amazon would make a final employment decision within ten (10) days. *See* **Exhibit A**. While the letter stated that a screening report and a summary of his rights under the Fair Credit Reporting Act were enclosed, these were actually received only a few days later directly from the screening agency, Accurate Background, Inc.

6.      About two weeks later, Plaintiff received another letter from Amazon dated May 6, 2019. It was captioned "Adverse Action Letter" and stated that his employment application had been rejected on the basis of information contained in a consumer report (the criminal background check) provided to Amazon by Accurate Background, Inc. The Adverse Action Letter informed Plaintiff Franklin that he had the right to dispute the accuracy of the information in his background report with Accurate Background, Inc. *See* **Exhibit B**. Plaintiff did not dispute the accuracy of the report.

7.      Plaintiff was denied employment on the basis of his criminal record, as there is nothing else in his background that could have motivated this decision. Plaintiff suffered significant harm because rather than receiving the multi-pronged review required under New York State and City laws that would have led to his hiring, he remained unemployed.

8.      Whole Foods is a proper Defendant because, under the direction of Amazon, it directs and supervises the hiring and work of all its grocery delivery drivers—whether directly employed or contracted through third-party vendors such as Cornucopia.

9.      Amazon is a proper Defendant because Amazon is Whole Foods's parent company, controls every aspect of operations at Whole Foods, including the hiring of delivery

workers, whether as employees or independent contractors.[1] The letters concerning the Plaintiff's background check and conviction history were signed by Amazon, not Cornucopia. And the April 22, 2019 letter made clear that "Amazon will make its final decision regarding your eligibility to deliver on behalf of Amazon." The "Requested By" entry on the background report lists Whole Foods and Amazon. *See* Dkt. No. 20-1 at 2.

10.    Cornucopia is a proper Defendant because it hires employees on behalf of Whole Foods and Amazon and contracts their work to Whole Foods and Amazon. While Cornucopia may pay the employees hired on behalf of Whole Foods and Amazon, all these employees work directly under the control and supervision of Whole Foods and Amazon. Cornucopia is a vendor of Whole Foods and Amazon, but it is jointly liable with Whole Foods and Amazon because it is complicit in their unlawful hiring protocols, which require all job applicants applying to work at Whole Foods and Amazon to undergo illegal background checks. Cornucopia works with Amazon and Whole Foods to ensure that all applicants undergo the illegal background checks required by Whole Foods and Amazon for employees hired by Cornucopia to work for Whole Foods and Amazon.

11.    Whole Foods and Amazon utilize an illegal scheme to outsource their unlawful background checks to third-party vendors, such as Cornucopia. While individuals hired by Cornucopia and other third-party vendors may be formally designated as independent contractors, they are in reality employees of Whole Foods and Amazon, because Amazon

---

[1] Whole Foods' and Amazon's description of their delivery services states that food delivery problems should be reported to "Amazon customer service," and that delivery is effectuated through Amazon's *prime* service, whose logo can be found on the delivery bags. The FAQs that follow these descriptions make clear that Amazon controls every aspect of the delivery process. *See* **Exhibit C**. There are also multiple "Whole Foods Market Employee Reviews for Delivery Driver" on Indeed.com. *See* **Exhibit D**.

controls every aspect of their employment, including supervising their work and training them to utilize Amazon proprietary technology to perform their work.

12.    Amazon and Whole Foods are joint employers of Plaintiff and Class members. Whole Foods is wholly owned by Amazon and Amazon makes all operational and personnel decisions on behalf of Whole Foods, including the hiring criteria for all employees and independent contractors.  Although Whole Foods and Amazon are separate corporate entities, Amazon has complete control over hiring, compensation, and all employee policies, at Whole Foods.  Moreover, all job duties and job performance criteria are dictated by Amazon and implemented at Whole Foods.

13.    Although Cornucopia would have nominally been the employer of Plaintiff had he obtained the position to be a delivery person for Whole Foods, Amazon and Whole Foods would have been the actual employer.  At the direction of Amazon, Whole Foods would have supervised the work performance of Plaintiff and controlled every facet of his employment. Even if the paychecks of Plaintiff would have been paid by Cornucopia, Amazon and Whole Foods, as joint employers would be Plaintiff's actual employer.  Similarly, other Class members would be employees of Amazon and Whole Foods.  Amazon and Whole Foods have liability under the claims described in this Complaint because they are the employer who wrongfully undertook background checks in violation of the NYSHRL, NYCHRL, and the FCA.  In such a scenario, Cornucopia would also have liability because they are aiding and abetting the wrongful acts of Amazon and Whole Foods.  Alternatively, if it is determined that Cornucopia is the employer, then Amazon and Whole Foods would still have liability for aiding and abetting Cornucopia.

14.     Even if Cornucopia was to be an actual employer of Plaintiff and the Class, Amazon and Whole foods were joint employers with Cornucopia, given their high degree of involvement in the hiring and supervision of employees.

15.     Through their procedures, Defendants violated Plaintiff Franklin's and Class members' rights under the three aforementioned statutes, causing them to suffer discrimination on the basis of conviction history.  On behalf of himself and Class members, Plaintiff seeks statutory damages; exemplary and punitive damages; injunctive and/or declaratory relief, pre-judgment and post-judgment interest; and reasonable attorneys' fees, costs, and expenses for Defendants' violation of the laws invoked in this Complaint.


## LEGAL ANALYSIS

### *New York State Human Rights Law (NYSHRL)*

16.     New York State Human Rights Law, N.Y. Exec. Law § 292 et seq. restricts the ability of employers to deny employment on the basis of applicants' criminal histories:

> It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law.

N.Y. Exec. Law § 296

17.     Article 23-A of the Corrections Law, which NYSHRL incorporates, prohibits employers from denying employment to an applicant when this denial "is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" the employer can show either "a direct relationship" between the conviction(s) and the job or "an

unreasonable risk to property or to the safety or welfare of specific individuals or the general

public." N.Y. Corr. Law § 752.

18.     To determine whether such a direct relationship and unreasonable risk exist,

Article 23-A requires employers to consider the following eight factors before taking any

adverse action on the basis of a job applicant's criminal record:

> (a)   The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
> (b)   The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
> (c)   The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
>
> (d)   The time which has elapsed since the occurrence of the criminal offense or offenses.
>
> (e)   The age of the person at the time of occurrence of the criminal offense or offenses.
>
> (f)   The seriousness of the offense or offenses.
>
> (f)   Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
>
> (g)   The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

 N.Y. Correct. Law § 753.

19.     Article 23-A furthermore requires employers to explain their reasoning to

applicants who are denied employment.  Those "previously convicted of one or more criminal

offenses" must be permitted to request a written explanation for the employer's denial of

employment, which the employer is required to provide within 30 days of the request. N.Y.

Corr. Law § 754.

20.     The NYSHRL provides for a private cause of action for job applicants harmed

by unlawful discriminatory practices on the basis of a criminal history, including punitive

damages and civil fines:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall
> have a cause of action in any court of appropriate jurisdiction for damages,
> including, in cases of employment discrimination related to private employers and
> housing discrimination only, punitive damages, and such other remedies as may be
> appropriate, including any civil fines and penalties provided in subdivision four of
> this section, unless such person had filed a complaint hereunder or with any local
> commission on human rights, or with the superintendent pursuant to the provisions
> of section two hundred ninety-six-a of this chapter, provided that, where the
> division has dismissed such complaint on the grounds of administrative
> convenience, on the grounds of untimeliness, or on the grounds that the election of
> remedies is annulled, such person shall maintain all rights to bring suit as if no
> complaint had been filed with the division.

N.Y. Exec. Law § 297

21.     NYSHRL also provides that it shall be an unlawful discriminatory practice "[f]or

any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this

article, or attempt to do so." N.Y. Exec. Law § 296(6).

22.     Defendants violated the NYSHRL when they denied employment to Plaintiff

Franklin on the basis of his criminal history when there was no direct relationship between that

history and the job for which Plaintiff was applying and when hiring him did not pose an

unreasonable risk to the property, safety, or welfare of specific individuals and the general

public. Given that Plaintiff was never convicted of a vehicular offense, there is no direct

relationship between his conviction and delivering groceries for Whole Foods. The State of

New York determined that Plaintiff did not pose an unreasonable risk to anyone's property,

safety, or welfare when it saw fit to parole him, and there is no reason the Whole Foods setting would alter this general conclusion.

23.     Defendant also violated the NYSHRL when they denied Plaintiff's employment application without undertaking an Article 23 analysis and without allowing him an opportunity to submit evidence of his rehabilitation and good conduct from individuals who were familiar with his life since his release from prison. This could have rebutted the negative inferences Defendants drew from his conviction history. But because Defendants unlawfully failed to undertake an Article 23-A analysis, Plaintiff was deprived of an opportunity to make his case. Nowhere during the application process was it possible to submit the relevant information.[2]

24.     If Plaintiff had been allowed to make his case, he would have been hired because there was no reason why he could not drive as a delivery person or fulfill any other delivery role. This failure to implement the fair review required under law led to Plaintiff's continued unemployment and loss of wages and compensation.

25.     Each Defendant violated NYSHRL either as Plaintiff's prospective employer or by aiding, abetting, inciting, compelling, or coercing Plaintiff's prospective employer to violate NYSHRL, in violation of N.Y. Exec. Law § 296(6). Cornucopia violated the NYSHRL when it aided and abetted Amazon and Whole Foods in violating the NYSHRL by implementing their

---

[2] *See Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 319 (2011) ("The Correction Law requires the DOE to 'consider' '[a]ny information produced by the person, or produced on his [or her] behalf, in regard to his [or her] rehabilitation and good conduct' in determining whether the 'unreasonable risk' exception applies to an application (Correction Law § 753 [1] [g])."); *Matter of Tinsley v Taxi & Limousine Commn.*, 62 N.Y.S.3d 769, 770 (2017) ("Under the relevant law, as interpreted by the Court of Appeals, the petitioner was entitled to a full and fair opportunity to present evidence at the hearing."); *Matter of Acosta v New York City Dept. of Educ.*, 16 N.Y.3d 309, 316 (2011) ("A failure to take into consideration each of these [Article 23-A] factors results in a failure to comply with the Correction Law's mandatory directive.")

directive to subject applicants to unlawful criminal background checks. Amazon and Whole Foods violated the NYSHRL when it incited, compelled, or coerced Cornucopia to subject applicants to these checks.

### New York City Human Rights Law (As Amended by the Fair Chance Act)

26.    New York City has also long supported the protections provided by Article 23-A.  The New York City Human Rights Law (NYCHRL) states that no employer may "deny employment to any person" based on a criminal conviction "when such denial or adverse action is in violation of the provisions of article twenty-three-a of the correction law." N.Y.C. Admin. Code § 8-107(10).

27.    New York City has found that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101. Overbroad and/or arbitrary bans on hiring because of conviction histories undermine New York City's clearly articulated policy. Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

28.    However, in 2015, New York City determined that Article 23-A standing alone was inadequate to its ends, given that discrimination on the basis of criminal background "still occurred when applicants were asked about their records before completing the hiring process because many employers were not weighing the factors laid out in Article 23-A." NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) ("Fair Chance Guidance") at 2.

29.     Accordingly, New York City supplemented Article 23-A protections by enacting the Fair Chance Act (or "FCA") on October 27, 2015, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment." *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 1 (2015)[3]

30.     The Fair Chance Act specifies the following procedures for inquiring into criminal backgrounds:

> (b)  After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof
>
> > (i)  provides a written copy of the inquiry to the applicant in a manner to be determined by the commission;
> >
> > (ii)  performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and
> >
> > (iii)  after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

---

[3] https://www1.nyc.gov/assets/cchr/downloads/pdf/FCA-InterpretiveGuide-052419.pdf

31.     NYCHRL defines the employer-employee relationship expansively, since "natural persons employed as independent contractors to carry out work in furtherance of an employer's business enterprise who are not themselves employers shall be counted as persons in the employ of such employer." N.Y.C. Admin Code § 8-102(5).

32.     NYCHRL also provides that it shall be an unlawful discriminatory or retaliatory practice "[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin Code § 8-107(6).

33.     Defendants violated the Fair Chance Act by inquiring into, and then taking adverse action on the basis of, Plaintiff Franklin's criminal history before making a conditional offer of employment. Indeed, Defendants were already in violation of the Fair Chance Act the instant they announced to applicants that a criminal background check would be required, as it is unlawful for a prospective employer to "[d]eclare, print or circulate or cause to be declared, printed or circulated any solicitation, advertisement or publication, which expresses, directly or indirectly, any limitation, or specification in employment based on a person's arrest or criminal conviction." N.Y.C. Admin Code § 8-107(11-a). This violation led to immediate loss of income for many Class members, as many individuals with criminal records would not even apply once confronted with this requirement.

34.     Not only was this criminal history inquiry legally premature, Defendants then failed to undertake an Article 23-A analysis, provide the results to Plaintiff Franklin, and then afford him an opportunity to respond to the analysis.

35.     Defendants' April 22, 2019 letter informed Plaintiff that a background check had been undertaken on him. But no conditional offer of employment had been extended at that point, making the background check unlawful. Indeed, Defendants had already violated the Fair

Chance Act when they required Plaintiff Franklin to consent to a background check as part of his application.

36.     Defendants violated the Fair Chance Act again through their May 6, 2019 Adverse Action Letter informing Plaintiff that his application for employment had been denied, as employers may not deny employment on the basis of a criminal history without first providing an applicant with their Article 23-A analysis and an invitation to respond to it.  At no point did Defendants do this.

37.     Defendants have acted consciously in breaching their known duties and depriving Plaintiff and other Class member job applicants of their rights under the NYCHRL.

38.     The ability to find employment is an essential aspect of reentering society for people with criminal histories.  Recidivism declines when those individuals have viable employment prospects and other stabilizing resources in their communities. Defendants' policy of discriminating against individuals with criminal records frustrates such public policy objectives.

39.     Had Defendants followed the procedures required by the Fair Chance Act, Plaintiff Franklin would have had an opportunity to present evidence of his good conduct and rehabilitation to offset the negative inferences Defendants drew from his conviction history. The Fair Chance Act Notice Defendants should have provided Plaintiff would have apprised him of the precise nature of their concerns, allowing him to respond directly and allay these. *See* **Exhibit E**.

40.     Facilitating dialogue between prospective employers and applicants with conviction histories is among the primary purposes of the Fair Chance Act:

> By giving an applicant at least three business days to respond, the FCA contemplates a process in which employers discuss their reasons for finding that an

applicant's record poses a direct relationship or unreasonable risk. The process
allows an applicant to respond either orally or in writing and provide additional
information relevant to any of the Article 23-A factors. After receiving additional
information from an applicant, an employer must examine whether it changes its
Article 23-A analysis. Employers may offer an applicant a similar position that
mitigates the employer's concerns.

41.     *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair*

*Chance Act*, Local Law No. 63 at 9-10 (2015)[4] Had Plaintiff been allowed to engage in such

dialogue, he would have been hired. Thus, Plaintiff suffered harm because he would have been

gainfully employed by Defendants but for Defendants' unlawful acts.  As a result of those acts,

he was forced to remain unemployed and suffered lost wages. Other Class members suffered

similar harms.

42.     Defendants Amazon and Whole Foods have claimed that the application process

they designed asked Plaintiff whether he had a conviction history and that Plaintiff replied in

the negative. Plaintiff does not recall answering this question, as he feared that answering it in

the affirmative would result in his automatic disqualification from consideration for the job,

before he had an opportunity to explain the circumstances of his conviction and his path toward

rehabilitation—precisely the problem that the Fair Chance Act was enacted to remedy.

43.     Even if Plaintiff did answer in the negative, his intent was not to deceive Whole

Foods—which he knew would be undertaking a background check and, hence, would not be

deceived—but merely to prevent the peremptory dismissal of his application.

44.     Any false statements by Plaintiff would not immunize Defendants from liability

under the Fair Chance Act, given that the very question about conviction history was unlawful

under that Act.  Plaintiff was injured by Defendants as soon as Defendants asked him about his

---

[4] https://www1.nyc.gov/assets/cchr/downloads/pdf/FCA-InterpretiveGuide-052419.pdf

conviction history.  Plaintiff accrued a cause of action already at this juncture irrespective of

what Defendants then proceeded to do:

> Donatella argues that the amendment is nonetheless devoid of merit because
> Harding did not suffer an injury as a result of Donatella's hiring practices. This court
> disagrees. The Fair Chance Act — in effect at the time — plainly provides that such
> a pre-offer inquiry regarding criminal history is an unlawful discriminatory
> practice. (*See* Local Law No. 63 (2015) of the City of New York § 2.) The New
> York City Administrative Code provides that a person aggrieved by an unlawful
> discriminatory practice may bring a cause of action for damages (including punitive
> damages), injunctive relief, or other appropriate remedies. (*See* Administrative
> Code §§ 8-107 (11-a) (g) and 8-502.) And a person may be aggrieved for purposes
> of § 8-107 (11-a) even if their only injury was the deprivation of a right protected
> by the Code. (*See* Administrative Code § 8-102 [definition of "Person aggrieved"].)

CARMELA HARDING, Plaintiff, - v - DONATELLA GCT LLC, DONATELLA ARPAIA,
MARK GERAGOS, Defendant., 2019 N.Y. Misc. LEXIS 1675, *3-4

45.    While no injury is required beyond "the deprivation of a right protected by the

Code," Plaintiff has in fact suffered injury beyond this. Defendants may argue that they denied

Plaintiff's application not because of his conviction history but because of an inconsistency

between that history and Plaintiff's representation. But this very inconsistency was an injury

brought about by Defendants' unlawfully premature inquiry about Plaintiff's conviction history,

a practice that was designed to place Plaintiff and other Class members in an untenable Catch-

22 position. But for this illegal inquiry, there would have been no inconsistency that Defendants

could seize upon as an excuse for denying Plaintiff's and Class members' employment

applications. Indeed, the only purpose of such inquiries is to generate such inconsistencies.

Given that the question was asked in the context of a background check, it was not going to

reveal any information that the background check would not disclose irrespective of the

applicant's answer.

46.    Each Defendant violated NYCHRL either as Plaintiff's prospective employer or

by aiding, abetting, inciting, compelling, or coercing Plaintiff's prospective employer to violate

NYCHRL, in violation of N.Y.C. Admin Code § 8-107(6).  Even if Plaintiff was not applying

to become an employee of Amazon and Whole Foods, he was applying "to carry out work in

furtherance of" Amazon's and Whole Foods' business.  N.Y.C. Admin Code § 8-102(5).

47.     Cornucopia violated the NYCHRL when it aided and abetted Amazon/Whole

Foods in violating the NYCHRL by implementing their directive to subject applicants to

unlawful criminal background checks. Amazon/Whole Foods violated the NYCHRL when it

incited, compelled, or coerced Cornucopia to subject applicants to these checks.

48.     Many employers require that, as part of the background check process,

applicants self-disclose all (or most) of their criminal history when also authorizing a

background check. If the applicant then asserts claims (either in court or before an

administrative tribunal) alleging that they were unfairly denied employment because of their

criminal history, the employer will use any discrepancy between the self-disclosed criminal

history and that revealed on the background check to claim they are not liable under the FCA.

They will argue that such a discrepancy is an "intentional misrepresentation" of criminal

history, which removes the individual from the protections of the Act.  The logic is that a denial

for supposed "intentional misrepresentation" of criminal history is not a denial because of

"having been convicted of one or more criminal offenses[,]" and thus the employer is not

obligated to perform an analysis under New York Correction Law Article 23-A ("Article 23-

A") or is otherwise liable under the FCA.

49.     The FCA was enacted to ensure that "job seekers" are "judged on their merits

before their mistakes" and "to level the playing field" for "New Yorkers who are part of the

approximately 70 million adults residing in the United States who have been arrested or

convicted of a crime." Employers' increasingly common legal strategy of focusing on what

information an applicant discloses instead of whether a conviction actually "relate[s] to a job or pose[s] an unreasonable risk" frustrates these goals and serves to keep qualified applicants with criminal histories from suitable employment.

50.     A requirement that applicants completely disclose their criminal history is nothing more than a memory test, is not probative of intent to lie, particularly when applicants are also authorizing background checks and understand that employers will get their records from a third party, and is another hurdle to employment for individuals with criminal histories. If an employee misrepresents, at best employers must bear the burden of proof and even then, cannot utilize the misrepresentation as the basis for not hiring, but only use the prior criminal offense as one of the Article 23-A factors to consider.

### *New York Fair Credit Reporting Act (NY FCRA)*

51.     The NY FCRA requires that:

When a consumer reporting agency provides a consumer report that contains criminal conviction information, permitted by paragraph one of subdivision (a) of section three hundred eighty-j of this article, to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

52.     Defendants violated the NY FCRA when they relied on a consumer report without providing Plaintiff Franklin with a printed or electronic copy of Article 23-A (discussed above).

53.     Upon information and belief, Defendants have routinely and systematically failed to provide other job applicant Class members with a copy of Article 23-A of the Correction Law after receiving a consumer report from a consumer reporting agency.

54.     This has caused Plaintiff and other job applicants concrete harm because it has denied them an opportunity to learn of their rights under Article 23-A of the Correction Law and created the risk of future harm.

55.     Defendants' failure to provide Plaintiff and other job applicants with a copy of Article 23-A of the Correction law denied them information about their legal right to be free from discrimination and about their remedies for that discrimination once it had occurred.

56.     Had Plaintiff received a copy of Article 23-A concurrently with the consumer report that was attached to Amazon's April 22, 2019 letter, he would have learned of his rights under it before Defendants took adverse action against him. He would have learned that Defendants could not deny him employment on the basis of his criminal history except insofar as the denial was guided by the factors enumerated in Article 23-A. Had he known this, he could have challenged Defendants to explain their decision to reject his application and provided Defendants with evidence of his own rehabilitation.  Plaintiff believes he would have persuaded Defendants of his suitability as an employee. Plaintiff suffered harm from lost wages and compensation due to his extended unemployment caused by Defendant's failure to hire him.

57.     Defendants did not permit any of this to take place, however.  And so Plaintiff only learned of his rights later and was forced to resort to burdensome legal action to vindicate his rights and those of others similarly situated.

58.     Additionally, given that the time for an individual to bring a claim against Defendants through the New York City Commission on Human Rights ("NYCCHR") is only

one year, as many Class members have had their choice of venues diminished through Defendants' actions, causing further concrete harm. *See* N.Y.C. Admin. Code § 8-109(e) (stating that commission lacks jurisdiction over complaints "filed more than one year after the alleged unlawful discriminatory practice or act of discriminatory harassment or violence . . . occurred"); N.Y. Corr. Law § 755(2) (explaining that claims can be brought against private employers, *inter alia*, through NYCCHR),

59.     Defendants' violation of the NY FCRA frustrates New York's public policy of increasing the employment of persons with criminal convictions. *See* N.Y. Corr. Law § 753(1)(a).

60.     The harms suffered by Plaintiff and other job applicants are the precise harms that the New York Legislature enacted section 380-g to prevent. *See* L. 2008, c. 465, § 2, eff. Feb. 1, 2009 (enactment of provision was to "ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law" because that information "will help to avoid illegal discrimination against persons with a criminal conviction").

## JURISDICTION AND VENUE

61.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

62.     The Court has personal jurisdiction over Defendants engaged in the wrongdoings alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have

19

sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, thereby rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Defendants' activity within New York State are substantial and not isolated.

63.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District. Plaintiff was seeking employment in Manhattan and was denied employment in Manhattan. Cornucopia Logistics' principal place of business is in Manhattan.


## PARTIES

### *Plaintiff Henry Franklin*

64.     Plaintiff Franklin is a citizen of New York and a resident of Richmond County.

### *Defendants*

65.     Amazon.com, Inc., is a Delaware corporation with its principal place of business at 410 Terry Ave N., Seattle, Washington, 98109. Its address for service of process is Corporation Service Company, 80 State Street, Albany, NY 12207.

66.     Whole Foods Market Group, Inc. is a Delaware corporation and a wholly owned subsidiary of Amazon.com, Inc. Its principal place of business is 550 Bowie Street, Austin, Texas, 78703.  Its address for service of process is CT Corporation System, 28 Liberty St., New York, NY 10005.

67.     Cornucopia Logistics, LLC is a New York limited liability company with a principal place of business at 60 East 42nd Street, New York, NY 10165 and an address for

service of process at Kevin Keane, c/o O'Connor Davies, LLP, 500 Mamaroneck Avenue, Harrison, New York 10528.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff Franklin brings this case as a proposed Class action pursuant to Federal Rule of Civil Procedure 23 ("Rule") on behalf of himself each of the following three classes of persons (collectively, the "Classes"):

69.     The **NYSHRL Class**, defined as:

All individuals with criminal records applying for employment with Defendants in New York State who, during the applicable three-year limitations period, were denied employment after Defendants undertook a criminal background check, without Defendants
    (a)  performing a complete New York Correction Law Article 23-A analysis, or
    (b)  giving the applicant an opportunity to submit evidence to be considered in the Article 23-A analysis

70.     The **NYCHRL Class**, defined as:

All individuals with criminal records applying for employment with Defendants in New York City who, during the applicable three-year limitations period, were (a) denied employment and (b) subjected to a criminal background check prior to the receipt of a conditional offer of employment.

71.     The **NY FCRA** Class, defined as:

All individuals with criminal records applying for employment with Defendants in New York State who, during the applicable two-year statute of limitations period, (a) were denied employment and (b) had consumer reports requested about them by Defendants but were not provided with a copy of article twenty-three-A of the correction law.

72.     These three classes are collectively referred to as "the Classes." Members of one or more of these three Classes are collectively referred to as "Class members."

73.     Plaintiff reserves the right to amend the foregoing class definitions based on information learned in the course of litigating this case, including but not limited to (1) the precise relationship between Defendant Cornucopia and Defendants Whole Foods and Amazon and (2) the application process with respect to all applicants for Whole Foods and Amazon positions in New York State and New York City.

74.     Class members are so numerous that joinder of all members is impracticable. The precise number of Class members is uniquely within Defendants' possession, and Class members may be notified of the pendency of this action by published and/or mailed notice.

75.     There are questions of law and fact common to Class members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include, among others:

   (a)    Whether Defendants violated the NYSHRL by denying employment to Plaintiff and the NYSHRL Class on the basis of a criminal record without undertaking an Article 23-A analysis or giving Plaintiff and Class members an opportunity to submit evidence to be considered in that analysis;

   (b)    whether Defendants violated the NYCHRL by undertaking a background check on Plaintiff and the NYCHRL Class, or requesting their permission to undertake a background check, before extending to them a conditional offer of employment;

   (c)    whether Defendants violated the NYCHRL by denying employment to Plaintiff and the NYCHRL Class without first providing them with an Article 23-A analysis and inviting them to respond to it;

   (d)    whether Defendants violated the NY FCRA by failing to provide Plaintiff and the NY FCRA Class with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d);

   (e)    whether Defendants were willful in their noncompliance with the requirements of the NYSHRL, NYCHRL, and NY FCRA;

   (f)    whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class members are warranted; and

(g)    whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

76.    Plaintiff's claims are typical of the claims of the classes he seeks to represent. Upon information and belief, it is Defendants' standard practice to take adverse actions against applicants without properly considering the factors laid out in the Correction Law, following the procedures laid out in the NYCHRL as amended by the Fair Chance Act, or the notice requirements of the NY FCRA. Plaintiff is entitled to relief under the same causes of action as other Class members.

77.    Plaintiff will fairly and adequately represent and protect the interests of Class members because his interests coincide with, and are not antagonistic to, the interests of the Class members. Plaintiff has retained Counsel who are competent and experienced in complex class actions. There is no conflict between Plaintiff and the Class members.

78.    Class certification is appropriate under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole (or as to a specific subset of issues). The Class members are entitled to declaratory and injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

79.    Class certification is also appropriate under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class members. For example, Defendants have maintained a common policy of taking adverse action without first properly considering the mandatory factors laid out in the Correction Law or otherwise following relevant provisions of the NYCHRL (including the Fair Chance Act).

80.     Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices. The amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. A class action will allow more individuals to obtain relief, given the high cost of bringing individual actions, while also saving judicial resources.

## CAUSES OF ACTION

## FIRST COUNT

### VIOLATIONS OF NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. Exec. Law § 292 et seq)

*Brought by Plaintiff on Behalf of Himself and the NYSHRL Class*

81.     Plaintiff, on behalf of himself and the NYSHRL Class incorporates the preceding paragraphs and alleges as follows:

82.     Defendants denied employment to Plaintiff and the NYSHRL Class based in whole or in part on the criminal history information contained within their consumer reports.

83.     Before denying employment to Plaintiff and the NYSHRL Class, Defendants failed to conduct a proper inquiry into the factors outlined in Article 23-A of the Correction Law, in violation of N.Y. Exec. Law § 296.  Defendants did not provide Plaintiff and Class members with an opportunity to submit evidence to be considered in that inquiry.

84.     As a result of Defendants actions and omissions, Plaintiff and the NYSHRL Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

85.     In addition to damages, Plaintiff and the NYSHRL Class seek an injunction compelling Defendant to comply with the procedures specified by the NYSHRL and declaratory relief to the effect that Defendants' discriminatory policies and practices are unlawful.

**SECOND COUNT**

**VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. Admin. Code. § 8-101 *et seq.*, § 8-107(11-a)(b)(i)-(iii)**

***Brought by Plaintiff on Behalf of Himself and the NYCHRL Class***

86.     Plaintiff, on behalf of himself and the NYCHRL Class, incorporates the preceding paragraphs and alleges as follows:

87.     Defendants denied employment to Plaintiff and the NYCHRL Class based in whole or in part on the criminal history information contained within their consumer reports.

88.     Defendant violated the NYCHRL when it undertook background checks on Plaintiff and the NYCHRL Class (and requested their consent to such) before extending to them a conditional offer of employment.

89.     Defendant further violated the NYCHRL when it denied employment to Plaintiff and the NYCHRL Class without:

   a.   providing a written copy of any Article 23-A analyses conducted on applicants, as required by N.Y.C. Admin Code § 8-107(11-a)(b)(ii); and

   b.   allowing applicants a reasonable amount of time, not less than three days, to respond to the inquiries and analyses, and hold the job open during that time, as required by N.Y.C. Admin Code § 8-107(11-a)(b)(iii).

90.     Each of these failures by Defendants establishes a separate cause of action and injured Plaintiff and the NYCHRL Class.

91.     As a result of all the foregoing failures, Plaintiff and the NYCHRL Class have lost employment opportunities, earnings and other employment benefits.

92.     In addition to damages, Plaintiff and the NYCHRL Class seek an injunction compelling Defendant to comply with the procedures specified by the Fair Chance Act and declaratory relief to the effect that Defendants' discriminatory policies and practices are unlawful.

### THIRD COUNT

**VIOLATIONS OF NEW YORK FAIR CREDIT REPORTING ACT**
**(N.Y. Gen. Bus. Law § 380-g(d))**

*Brought by Plaintiff on Behalf of Himself and the NY FCRA Class*

93.     Plaintiff, on behalf of himself and the NY FCRA Class, incorporates the preceding paragraphs and alleges as follows:

94.     Defendants violated the NY FCRA by procuring consumer reports from Plaintiff and the NY FCRA Class without providing them with copies of Article 23-A of the Correction Law.

95.     Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the NY FCRA Class, including but not limited to the fact that they could not learn of their rights under Article 23-A.

96.     Defendants acted willfully and in knowing or reckless disregard of their obligations and of the rights of Plaintiff and the NY FCRA Class.

97.     Defendants' willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

98.     As a result of Defendants' actions, Plaintiff and the NY FCRA Class have been deprived of their consumer rights, prevented from timely and effectively contesting the adverse action.

99.     Defendants' willful and/or negligent conduct makes them liable for actual damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l and N.Y. Gen. Bus. Law § 380-m.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class members pray for relief as follows:

(a)     Certification of the case as a class action on behalf of the proposed Classes;

(b)     Designation of Plaintiff Franklin as representative of Class members for all three Classes;

(c)     Designation of Plaintiff's counsel of record as Class Counsel for all three Classes;

(d)     Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

(e)     An award of all applicable compensatory and statutory damages for violations of the NYSHRL, NYCHRL, and NY FCRA;

(f)     An award of all applicable punitive damages for all violations of the NYSHRL, NYCHRL, and NY FCRA found to be willful;

(g)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h)     Pre-judgment and post-judgment interest, as provided by law;

(i)     Payment of a reasonable service award to Plaintiff Franklin, in recognition of the services he has rendered and will continue to render to Class members, and the risks he has taken and will take; and

(j)     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: September 25, 2020

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
Rony Guldmann (RG 5323)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Classes*